Estate of Frank H. Short, Deceased, Pearl L. Short, Executrix, and Pearl L. Short, Surviving Wife v. Commissioner.
Estate of Frank H. Short, Deceased v. Commissioner
Docket No. 20636.
United States Tax Court
1950 Tax Ct. Memo LEXIS 110; 9 T.C.M. (CCH) 768; T.C.M. (RIA) 50219; August 31, 1950
Gilbert H. Jertberg, Esq., and Allan Oakley Hunter, Esq., for the petitioners. T. M. Mather, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The Commissioner determined a deficiency in the income tax liability of Frank H. Short, deceased, and Pearl L. Short, his surviving wife, for the years 1944, 1945, and 1946 in the amounts of $4,932.73, $1,598.09, and $5,093.53, respectively. Joint returns for the taxable years were filed by Frank and Pearl Short. Pearl Short is both the survivor of the two persons who filed joint returns and the executrix of the estate of the deceased person who filed joint returns. The joint returns for 1944, 1945 and 1946 were filed with the collector for the first district of California. The issue presented for decision relates to deductions *111 which Frank Short, deceased, took in the joint income tax return for each taxable year for payments which he made to his former wife, Dot Marie Wolfe Short, who obtained a divorce from him in 1928. He claimed the deductions under section 23(u) of the Internal Revenue Code. The question which is presented by the pleadings is whether the payments were in discharge of a legal obligation which, because of the marital relationship, was incurred by Frank Short, deceased, under a written instrument incident to the divorce, as is prescribed in section 22(k) of the Code. The petitioner does not contest other adjustments which have been made by the respondent in the net income of each of the taxable years. The record in this proceeding comprises oral and documentary evidence and a stipulation of facts. Findings of Fact The facts which have been stipulated are found as facts, and the stipulation is incorporated herein by this reference. Frank H. Short died on January 11, 1947. Pearl L. Short is his surviving wife and is the duly appointed executrix of his estate. On September 10, 1910, Frank H. Short was married to Dot Marie Wolfe at Visalia, California. A son, *112 Frank H. Short, III, was born of this marriage in 1918. On April 9, 1928, Dot Short was granted a divorce from Frank Short by the District Court of Nevada in Reno. Thereafter, Frank Short married Pearl L. Short, the petitioner. Frank Short inherited real property from Frank H. Short, Sr., his father, who died in 1920. The property consisted of a ranch located near Sanger in Fresno County, California, and two lots and a garage in the city of Fresno. This property was the separate property of Frank Short under the laws of California, and title to the property was recorded in the name of Frank Short. But on May 4, 1926, the titles to the aforesaid properties were transferred to Frank H. Short and his wife, Dot Short, as joint tenants. The transfer to Dot Short of a joint tenancy interest in the properties was a gift by Frank to Dot Short. Frank Short's mother died in 1925. By her will, a testamentary trust was created. Frank Short was a beneficiary of part of the income of his mother's testamentary trust. During the entire period that Frank and Dot Short were married, they lived on the income of the property which Frank Short had inherited from his father, and from the income of *113 the trust of his mother of which he was a beneficiary. At the time of the divorce of Dot Short from Frank Short there was no community property. Shortly after their marriage, Frank Short and Dot Short established their residence at the ranch near Sanger, and they resided there until about the summer of 1925 when they moved to Carmel, California, where they established a new residence. Frank Short resided in Carmel with his family until January 5, 1928. On January 5, 1928, Frank Short went to Reno, Nevada, with the intention of establishing his own separate residence there, and he maintained his separate residence in Reno until April 9, 1928, at least. He went to Reno with the intention of filing suit for divorce from Dot Short in the State of Nevada, and he filed such suit. Frank and Dot Short, during their residence at Carmel, became acquainted with James Doud, and he became a friend of both of them, but especially of Dot Short. James Doud was in the real estate business. At some time before January 12, 1927, Dot Short told her husband and Florence Medcalf, who was employed by the trustees of the Short estate and had been the secretary of Frank Short's father, that she wanted *114 to obtain a divorce from Frank Short and that she intended marrying James Doud. She told Florence Medcalf that she and her husband were going to separate; that she intended going to Paris to get a divorce; and that after her marriage to Doud they were going to live in South America. Frank and Dot Short discussed the contemplated divorce and agreed that Dot Short should convey back to Frank Short the interest which he had given her in the ranch and city properties in Fresno County, which he had inherited from his father and which had been his separate property before he gave her an undivided joint interest therein. Dot Short wanted $50,000 for her interest in the properties. They discussed this matter with Florence Medcalf and told her to negotiate for a bank loan to Frank Short for $50,000 to be secured by a mortgage on the properties, and they told her to have the necessary legal documents prepared for the conveyance from Dot to Frank Short, and for the mortgage to secure the loan to Frank Short. The Bank of Italy was willing to make a mortgage loan of only $35,000. The loan was made to Frank Short; Dot Short conveyed her interest in the properties back to Frank Short; and Frank Short *115 gave the bank a deed of trust to the properties to secure the loan to him. A check for $35,000 was made payable to Frank Short. In contemplation of a divorce, Frank and Dot Short entered into a written agreement on January 12, 1927, under which Frank agreed to pay Dot Short $35,000 cash, which is the sum referred to above. Dot Short (1) accepted the above sum of money as full and complete settlement of all of the interest which Short had given to her in the ranch and city properties and in settlement of her rights as a wife in Short's estate; (2) she stipulated away and transferred to Frank Short complete custody of their son; and (3) she waived all of her claim or right to future support from Frank Short, or to alimony in the event of a divorce. The sum of money stated in the agreement was agreed upon in the amount of $35,000 because that was the largest amount which Frank Short could obtain as a loan on the properties. On or about January 15, 1927, Frank and Dot Short and James Doud were in San Francisco. Frank Short had the bank's draft for $35,000 in his possession. The three persons went together to a bank, and in the presence of Dot Short and at her request Frank Short gave *116 the $35,000 to James Doud. Thereafter, under undisclosed circumstances, Doud, without the knowledge or consent of Frank Short, speculated with the $35,000 and lost all of the money excepting $3,800 thereof, which he returned to Frank Short who deposited it in a joint tenancy bank account maintained by himself and Dot Short. Dot Short did not bring any legal action against Doud or anyone else to recover the money which had been lost. Subsequently, after he was divorced from Dot Short, Frank Short repaid the bank loan. James Doud, after losing the money, embarked upon a trip to Europe. Dot and Frank Short and their son also went to Europe in the latter part of 1927, leaving New York on November 30, 1927. They went to Paris. Doud had departed from Paris. In London they met Doud. Doud declined, for the time being, to marry Dot Short. The Shorts and Doud returned to New York City on the same boat. Doud remained in New York, and the Shorts returned to Carmel. On or about November 7, 1927, the agreement of January 12, 1927, was destroyed by burning the document. Dot Short claimed later that the document was destroyed with the intent on the part of both parties to eliminate the agreement. *117 Frank Short claimed later that the document was destroyed against his will, under his protest, and that he had no intention of terminating the agreement. Around the date of November 7, 1927, Dot Short requested Frank Short to enter into another agreement which would make provision for her for the rest of her life. Frank Short agreed that he would pay her $300 per month during her life. Dot Short was willing to accept this amount, monthly, because she knew she could live on that and take care of her son. (Transcript, p. 52.) On November 8, 1927, Frank Short wrote out in longhand, signed, and acknowledged an instrument, the entire provisions of which were as follows: "I hereby agree to pay to Dot Marie Wolfe Short $300.00 per month as long as she lives whether she remains my wife, or divorced, or the wife of another whether living in this country or abroad. "/s/ Frank H. Short" No payments were made to Dot Short under the above agreement for as long as the parties continued to live together as man and wife. Frank Short continued to support Dot Short for as long as they lived together. The agreement of November 8, 1927, was a new agreement, and it was separate from the agreement *118 of January 12, 1927. Prior to November 8, 1927, and thereafter, Frank and Dot Short discussed getting a divorce, and the possibility of getting a divorce in Paris. Prior to November 8, 1927, both Frank and Dot Short had secured passports and other necessary papers to go to Paris. When they were in London in the latter part of 1927, James Doud demurred to marrying Dot Short. During their return trip from New York to San Francisco, Dot and Frank Short continued discussions about getting a divorce, and they agreed that one or the other of them would go to Reno, Nevada, and file suit for divorce. On January 4, 1928, shortly after their return from New York, Frank Short went to Reno, Nevada, and established his separate residence there for the purpose of securing a divorce, and he lived in Reno until April 9, 1928, at least. In order to establish the jurisdiction of a Nevada court over a divorce proceeding, the complainant must have established a residence in Nevada by having lived there for three months. Frank Short commenced making payments of $300 per month under the November 8 agreement as soon as he took up his separate residence in Nevada. Prior to the divorce proceeding Dot Short *119 and Frank Short understood that the November 8 agreement was to be in lieu of alimony under the divorce. Frank Short filed suit for divorce against Dot Short in the District Court of Nevada for Washoe County, in Reno. Dot Short filed, through her attorney, a cross-suit for divorce from Frank Short. Frank Short appeared at the trial of the proceeding on April 9, 1928, and gave testimony. Dot Short did not appear, but her deposition, taken in Moneterey County in California on April 6, 1928, under written interrogatories, was introduced in evidence. In her cross-suit, Dot Short asked for custody of their child, and Frank Short did not object. From the time Frank Short separated from Dot Short and left his home in Carmel to establish a separate residence in Reno, Nevada, i.e., from January 1, 1928, he paid her $300 per month in compliance with the agreement of November 8, 1927. At the divorce trial, Frank Short testified that he had been supporting Dot Short and their child pursuant to an agreement which he had with her to pay her $300 per month. He testified in response to questions as follows: "Q. You are willing to continue that support in accordance with that agreement, are you *120 not? "A. Yes, I am. "Q. And that agreement calls for the payment of how much? "A. $300 a month." Frank Short, in his testimony above quoted, had reference to the agreement of November 8, 1927. Dot Short's testimony with respect to permanent alimony for her own support and maintenance, given in her deposition, was as follows: "Interrogatory No. 30. Do you waive all right to permanent alimony for your own support and maintenance? "Answer No. 30. I waive all such rights, except those previously agreed upon." It was understood by Frank Short prior to his appearance at the divorce trial on April 9, 1928, that Dot Short did not waive, entirely, permanent alimony for her own support and maintenance, but that she relied upon Short's agreement of November 8, 1927, that he would pay her after the divorce and during her life $300 per month. Dot Short so advised Frank Short by telephone, and he so advised his attorney before the trial. In her testimony, above quoted, she had reference to the November 8 agreement. At the trial, Frank Short testified that he was willing to continue to pay Dot Short, after the divorce, $300 per month in compliance with the agreement. The Nevada *121 District Court, on April 9, 1928, entered judgment for Dot Short on her cross-complaint, granting her a decree of divorce from Frank Short. It also awarded her the custody and control of her minor child. The decree of divorce did not contain any provisions concerning alimony, or other payments to Dot Short, and it did not refer to the agreement of November 8, 1927. Frank Short paid Dot Short $300 per month in compliance with the November 8, 1927, agreement until October 31, 1928. When he failed to make the payment due on November 1, Dot Short instituted an action in the Superior Court of California for Fresno County for the purpose of collecting payments under the agreement of November 8, 1927. Frank Short denied, in this litigation, any liability to make further payments under the agreement of November 8, 1927, contending inter alia that the agreement was extorted from him by Dot Short under various threats, was made pursuant to a plan to facilitate dissolution of the marriage of the parties and to enable Dot Short to enter into a marriage with another person, was contra bonos mores, and was invalid. The Superior Court, on July 24, 1929, ordered judgment in favor of Dot Short, *122 under which Frank Short was ordered to pay her the back payments under the contract from November 1, 1928, to and including June 1, 1929, in the total amount of $2,400, plus interest, and to pay her $300 per month on first of every month beginning July 1, 1929, during her life. The Superior Court found that the agreement of November 8, 1927, was a valid, existing, and continuing contract. The court found, inter alia, that Frank Short had instituted a suit for divorce in Nevada against Dot Short on April 6, 1928; that Dot Short had filed a cross-complaint praying that the divorce be granted to her; that the Nevada court had heard evidence in the cause; and that in connection with the divorce proceeding, Frank Short had "recognized, ratified and confirmed" the agreement of November 8, 1927, and that "no other or additional provision was made in connection with said divorce proceedings, or otherwise, for the maintenance and support by said Frank H. Short of said Dot Marie Wolfe Short, or of said minor child, Frank H. Short III." The Superior Court, in its opinion, referred to the agreement of January 12, 1927, and to the facts relating to the payment of $35,000 to James Doud. The court *123 found that Frank Short had paid $35,000 to James Doud "at the request of the plaintiff [Dot Short]," and "that both plaintiff [Dot Short] and defendant [Frank Short] were, and each of them was negligent and at fault in failing to make proper and timely efforts to secure the payment of the said Thirty-five Thousand Dollars ($35,000.00) from said James Doud to plaintiff [Dot Short] herein * * *" The court found that on November 8, 1927, the parties had modified the agreement of January 12, 1927. Frank Short filed appeal in the District Court of Appeal of California. The Court of Appeal, on June 4, 1930, entered its decision in which it held that the Superior Court erred in finding that the November 8 agreement was a modification of the January 12 agreement, saying: "The finding was not in response to any written allegation. * * * Our attention has not been called to any evidence showing that in truth and in fact it was a modification of the first agreement." The Court of Appeal found that the November 8 agreement "was made a short time prior and was carried into the divorce case * * *." The Court of Appeal affirmed the judgment of the Superior Court upon its finding *124 that Frank Short, in the divorce proceeding, had recognized, ratified, and confirmed the November 8 agreement, and stated as follows: "On examining that record it appears that on the hearing Mr. Short represented to the trial court [in Reno] that the second agreement [of November 8, 1927] was and is a valid subsisting agreement and he took a judgment against himself that imposed no duty on him to pay maintenance moneys for his wife or child. He is now estopped from claiming that the second agreement is illegal." (15 Cal. Jur. p. 144; Borland v. Borland, 56 Cal. App. 638). Pursuant to and in discharge of the obligation incurred by Frank Short under the written agreement signed by him on November 8, 1927, Frank Short paid to Dot Short $7,900 during 1944; $3,600 during 1945; and $13,118.45 during 1946. The payments which Short made in 1944 and 1946 included back payments which had remained unpaid. The agreement of November 8, 1927, was a written agreement incident to the divorce of Dot from Frank Short, and it was entered into for the purpose of providing support and maintenance to Dot Short during her life in the event of divorce from Frank Short. The payments *125 made by Frank Short, deceased, in the years 1944, 1945, and 1946 to Dot Short were made in compliance with the agreement of November 8, 1927, and were for her support, and they were made in discharge of the support obligation of Frank Short under the above agreement and because of the previous marital relationship. In the notice of deficiency, the respondent gave the following explanation of the ground upon which he denied Frank Short, deceased, deductions in each of the taxable years for the payments made under the November 8, 1927, agreement: "Under date of April 9, 1928, the decedent was divorced. The decree of divorce failed to recognize the general obligation of support of the wife or to specifically provide for periodic alimony payments to her. "It is held that the amount of payment made during the taxable year is not deductible under the provisions of section 23(u) of the Internal Revenue Code as alimony payment. * * *" Opinion The petitioner contends that the payments made in 1944, 1945, and 1946 by Frank Short, deceased, to Dot Short were made by him in discharge of a legal obligation which, because of the marital relationship, was incurred *126 by him under a written instrument incident to the divorce of Dot Short from Frank Short, and that, therefore, the payments come within section 22(k) [1] of the Internal Revenue Code. Upon this contention, the petitioner claims that deductions for the amounts of the payments are allowable under section 23(u) of the Code, and that the respondent erred in disallowing the deductions. The only questions are whether the agreement of November 8, 1927, was incident to the divorce of Dot from Frank Short, and whether the $300 payments were *127 for her support or were to pay her for property interests. The dispute between the parties is over the ultimate facts. The parties have stipulated many of the evidentiary facts, but they are in disagreement as to the conclusions which are to be drawn from all of the evidence. In this situation it devolves on this Court to construe and determine the facts from all of the evidence before it and to find the ultimate facts. The evidence in this proceeding has been carefully reviewed, and from it lengthy findings of fact have been made. We do not agree with the contention of the respondent that the written agreement of November 8, 1927, was not incident to the divorce which was awarded Dot Short on April 9, 1928, or that the agreement was not entered into in contemplation of the divorce, or that the $300 payments were not for support in lieu of alimony under the divorce decree. There are in evidence in this proceeding a copy of the record which was made of the divorce hearing and copies of the opinions of the Superior and District Court of Appeal of California which were entered in the subsequent suit of Dot Short to collect payments under the agreement of November 8, 1927. All of these *128 documents show clearly that the agreement in question was brought into the divorce proceeding and was regarded by the parties as a support and maintenance agreement in lieu of alimony, and that the monthly payments were for support and were not payments for any previous property interests of Dot Short. The respondent advances the theory that the November 8 agreement and the agreed payments $300of a month for life to Dot Short constituted payment to her for her interest in community property. Frank and Dot Short testified in the divorce proceeding that there was no community property at the time of the divorce. Petitioner's counsel, on brief, points out that it has been stipulated in this proceeding that Frank and Dot Short, during their marriage, lived on the income of property or interests in property which Frank Short had inherited. The separate property of a spouse, in California, includes property acquired after marriage by gift, bequest, devise and descent, and the rents, issues and profits therefrom. Civil Code of California, sections 163, 164. There is no evidence in this proceeding from which a finding can be made that the agreement of November 8, 1927, was to provide payment *129 to Dot Short for any interest in community property, or that she had any interest in community property before or after January 12, 1927, or at the time of the divorce. There is no evidence that Frank Short ever had any earnings of his own at any time during the period he and Dot Short were married, which would constitute community property, or that there was any community property at any time. Respondent suggests, further, that the monthly payments of $300 represented payments to Dot Short for the interests which she previously held in some of Frank Short's separate property. The November 8 agreement does not so state, and we think the contention must be answered by the terms of that agreement which are clear. Also, the contention of the respondent cannot be inferred from the terms of the agreement. Payments under the agreement were not limited to $35,000, or to any other amount, and they were, at the rate of $3,600 a year, to continue for Dot Short's life. The parties have stipulated that the $35,000 was paid over to James Doud on January 15, 1927, "at the request of and in the presence of" Dot Short. (Stipulation, par. 15.) In the litigation to enforce payments under the November *130 8 agreement, the District Court of Appeal did not find any evidence that the November 8 agreement was a modification of the January 12 agreement. There is no evidence in this proceeding from which such finding could be made. There is, on the other hand, evidence in this proceeding which strongly supports the conclusion that the November 8 agreement was a new and separate agreement, and that has been found. Furthermore, we think it is clear that Dot Short was paid the $35,000 for her previous interest in certain properties, and that she lost that sum upon consenting to let James Doud speculate with it. The respondent contends that the question presented is controlled by Benjamin B. Cox, 10 T.C. 955; aff'd., 176 Fed. (2d) 226; and Frank J. DuBane, 10 T.C. 992. The Cox case involved payments to a divorced wife under an agreement made by divorced parties after they had been divorced. It was held in the Cox case that the agreement was not "incident" to the divorce, and that the taxpayer's obligation arose, at most, "because he wished to retain his divorced status." In the DuBane case, the facts supported the conclusion that payments to a divorced *131 wife were made under an "obligation to pay a purchase price for real property theretofore in the name of the wife under a deed executed pursuant to the written agreement of January 8, inspected, approved, and relied upon by the judge in the divorce proceeding." Respondent has cited the DuBane case in connection with his contention that the November 8 agreement, in this proceeding, was a modification of the January 12 agreement and that, therefore, payments for life of $300 per month were in consideration for the conveyance which Dot Short had made around January 12 of her joint interest in properties in Fresno County. Since the evidence in this proceeding does not support respondent's contention, and we do not find that the payments under the November 8 agreement were under an obligation to pay consideration for transfers of interests in properties, the DuBane case has no applicability to the issue in this proceeding. It should be pointed out that in the DuBane case, the written agreement of February 18, 1935, provided that payments of $20 per week would be made to DuBane's former wife in consideration for conveyances of property which were made after the execution of the agreement. *132 In this proceeding, there is no similar provision in the written agreement of November 8. As heretofore stated, we think the question is controlled by what is said in the November 8 agreement rather than by inferences and speculation. The petitioner's contention that the payments in question come within section 22(k) of the Code is sustained for the following reasons: The payments were periodic payments (to which respondent agrees), made to a woman who was divorced under a decree of divorce, and they were received subsequent to the decree of divorce. Frank Short entered into a written agreement a few months prior to the divorce to pay Dot Short $300 per month for life, and that obligation was to continue in the event that she became divorced from him. He made the payments of $300 a month to provide Dot Short with support and maintenance prior to the divorce. He testified during the trial of the divorce action that he would continue to provide that support, in accordance with the written agreement. Dot Short in her deposition, which was introduced in evidence, evidenced her understanding that the support which she had been receiving under the agreement would continue after the divorce. *133 In later litigation, a California court held that Frank Short had ratified, recognized, and confirmed the agreement at the divorce hearing, and that as a consequence, although judgment was against him in the divorce, the court made no other provision for the support of the wife. There can be no doubt that the November 8 agreement satisfies the statutory condition in section 22(k). The payments in question in this proceeding were made by Frank Short, deceased, for the support of Dot Short and in discharge of a legal obligation, which because of the marital relationship he incurred under a written instrument incident to the divorce, and it is so held. Upon all of the evidence it is held that the agreement of November 8, 1927, was incident to the divorce. The facts in this proceeding bring it within the decisions of Robert Wood Johnson, 10 T.C. 647; George T. Brady, 10 T.C. 1192; and Jessie L. Fry, 13 T.C. 658. In this proceeding, as in the Fry case, Frank and Dot Short proceeded, both in making the November 8 agreement and in their other arrangements "with a divorce decree in mind." The delay in obtaining the decree of divorce, i.e., from November 8, 1927, to *134 April 9, 1928, has been sufficiently explained to eliminate the objection that the interval between the date of the agreement and the date of the decree was so great as to preclude any connection between them. It is true that a Paris divorce was contemplated but a Reno divorce was obtained. Explanation for that shifting of the jurisdiction has been sufficiently explained. See George T. Brady, supra.We think the evidence leaves no doubt that the November 8 agreement was reached in anticipation of a divorce; and as we said in the Fry case, since a divorce proceeding was ultimately prosecuted to a decree of divorce, and since all other requirements of section 22(k) are fulfilled, sections 22(k) and 23(u) apply. But if it could be said that there is doubt in the matter of whether there was a clear intent to get a divorce on November 8, 1927, when the agreement providing for the monthly payments was made, then consideration must be given to the facts as they existed when Frank Short left his wife on or about January 4, 1928, to establish his separate residence in Reno for the purpose of filing suit for divorce and commenced making the monthly payments under the agreement. *135 At that time on January 4, 1928, the parties intended, without any doubt, that the written agreement of November 8, 1927, was the one under which Dot Short would receive support payments for life, both before and after the divorce, and they recognized the agreement and brought it into the divorce trial as an agreement to provide support in lieu of alimony under the decree. See Robert Wood Johnson, supra, where lack of mention of divorce in a written agreement which was executed more than three months before a divorce proceeding was instituted was not regarded as disqualifying the agreement from satisfying the requirements of section 22(k). On the other hand, in this proceeding the written agreement mentions the possibility of a divorce of Dot from Frank Short. That the decree of divorce of the District Court of Nevada did not mention the November 8 agreement does not, in itself, disqualify that agreement as an agreement incident to the divorce. In Tuckie G. Hesse, 7 T.C. 700, 703, and in the Johnson, Brady, and Fry cases, it is shown in the findings of fact in each case that the decree of divorce, in each instance, did not make provision for alimony or other *136 payments and did not refer to or adopt the support agreements which the parties had entered into prior to divorce. In each of the cited cases, the question presented was whether payments made to a divorced wife after the divorce were payments made in discharge of a legal obligation which, because of the marital or family relationship, was incurred by the husband "under a written instrument incident to such divorce." In George T. Brady, supra, the following finding was made: "Massachusetts courts generally refuse to incorporate lengthy alimony or property agreements in their decrees of divorce." In the Brady case, we observed that the respondent based "his argument chiefly on the fact that there was no direct reference in the court decree to the agreement [for support], nor did the agreement specifically require the procurement of a divorce." We then pointed out that the charge of collusion is to be avoided by parties making agreements prior to divorce and said: "The rule must be borne in mind when we consider the relationship between agreements and divorce proceedings." (Page 1198.) In Robert Wood Johnson, supra, pp. 653 and 654, we recognized that *137 an agreement made prior to a divorce did not mention that it was conditioned upon the wife's bringing action for divorce. However, the circumstance that the agreement would have been voidable under New Jersey law if it had been conditioned upon the wife's bringing action for divorce was noted. Also, in the Johnson case the special master in chancery who heard the divorce proceeding stated in his report to the chancellor that Johnson had made ample provision for the support of his wife and child, including an agreement to pay $30,000 annually to his wife. Thus, the court knew of the support agreement through evidence adduced at the trial and gave it consideration even though the decree of divorce did not mention the support agreement. The same procedure was followed in the divorce trial of the Shorts. In section 22(k), a distinction is made between periodic payments made after a divorce to a divorced wife in discharge of a legal obligation which is imposed upon the former husband under the divorce decree, and payments made in discharge of a logical obligation which is incurred by such husband under a written instrument incident to a divorce. The two types of obligation of the divorced *138 husband are referred to in the disjunctive. It is assumed that this distinction in section 22(k) is generally recognized since the provisions of section 22(k) are clear in the matter. But in this proceeding, as well as in those above cited, the respondent in his original determination, or in the trial of the proceeding, has raised the point that the decree of divorce, in the respective instances, did not refer to a pre-divorce, written, support agreement as evidence that the agreement was not "incident to such divorce," and that, therefore, a statutory condition had not been met. Suffice it to say that this Court, in each one of the cited cases, considered all of the evidence in arriving at the conclusion that a written agreement was "incident to" a divorce, and the single fact that the divorce decree did not refer to a written, pre-divorce, support agreement was not held to be determinative of the question of whether the agreement was "incident to" the divorce. The cited cases are authority for holding here that the lack of any reference to the written agreement of Frank Short, deceased, of November 8, 1927, in the divorce decree of the Nevada court is not sufficient ground for holding *139 that the agreement was not incident to the divorce, in view of all of the evidence before us. We have pointed out, and have found, that Frank Short, deceased, referred to his agreement to pay Dot Short during her life $300 monthly in his testimony to the court in the divorce trial; that he testified that he had been paying her that sum monthly for her support; that he testified that he was willing to continue to do so after the divorce; and that Dot Short did not entirely waive her right to receive support and maintenance payments at the divorce trial, but, rather, declined to waive her right under the agreement of November 8, 1927, to receive $300 monthly for life. The facts here are the same as in George T. Brady, supra, where the court was advised of a written support agreement and, made no reference to it in the divorce decree. Since other determinations of the respondent have been conceded by the petitioner, Decision will be entered under Rule 50. Footnotes
1. SEC. 22 (k). (k) ALIMONY, ETC., INCOME. - In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, * * *↩